UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAFAEL MARRERO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-cv-0243 |
| | § | |
| WILLBROS GROUP, INC., et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure from each of Defendants Willbros Group, Inc. ("Willbros"; Doc. No. 18), Willbros Group Executive Team ("WGET"; Doc. No. 21), and Willbros Group, Inc. 2010 Management Severance Plan for Senior Management ("Tier II Plan"; Doc. No. 23) (collectively, "Defendants"). After considering the Motions, all responses thereto, and the applicable law, the Court concludes that Defendants' Motions should be denied.

## I.   BACKGROUND

Plaintiff Rafael Marrero seeks to recover severance benefits under Willbros's employee benefit plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq.* Mr. Marrero alleges that he was employed with Willbros from July 14, 2008 to October 9, 2012, in senior management positions. According to his First Amended Complaint,[1] Mr. Marrero initially worked at the company's Houston headquarters, and

---

[1] The following factual allegations are taken from Plaintiff's First Amended Complaint ("FAC"; Doc. No. 17), and are accepted as true for purposes of the pending motions. *See* FAC ¶¶ 9-16.

1

lived in Houston with his spouse. In January, 2010, he was informed by Willbros that he was eligible to participate in the Key Employee Severance Plan ("Tier III severance plan").

In May, 2012, Willbros decided to transfer Mr. Marrero to the company's T&D Services division, as Vice President of Operations. The T&D Services division is based in Fort Worth, Texas, and provides electrical transmission and distribution construction services. Mr. Marrero was offered a relocation package to help him move from Houston to the Fort Worth area. With this transfer, he also became eligible to participate in the Willbros Group, Inc. 2010 Management Severance Plan for Senior Management ("Tier II severance plan"). Mr. Marrero accepted this transfer, including participation in the Tier II severance plan, and began to work at the T&D Services division in Fort Worth.

While working at the T&D Services division, Mr. Marrero sold his Houston home in June, 2012, and made an offer on a house in the Fort Worth area. About this time, Mr. Marrero also learned of company losses that would soon be disclosed and senior management personnel issues which raised, for him, significant uncertainty as to the company's long-term stability and health. These uncertainties, combined with some structural problems with his prospective Fort Worth house, and the fact that the relocation package did not require him to purchase a home in Fort Worth, led Mr. Marrero to lease an apartment in Fort Worth rather than going through with the house purchase. Mr. Marrero's spouse decided to stay in Houston in order to pursue her own career, so Mr. Marrero worked in Fort Worth during the week and returned to Houston to see his spouse on the weekends. Mr. Marrero states that his supervisors were aware of his decision and did not react negatively, and that he was not alone in living outside his assigned work area; he claims that other senior management officials in Fort Worth and elsewhere maintained similar living arrangements.

According to Mr. Marrero, in August 2012, Willbros wrongfully removed him from the Tier II severance plan and returned him to the Tier III plan because he had relocated to Fort Worth but did not buy a home there. Mr. Marrero states that Willbros took this action without the required approval of the Board of Directors. Then, on October 9, 2012, Willbros terminated Mr. Marrero's employment. Mr. Marrero maintains that his employment was also terminated because he used the relocation package to move to Fort Worth without purchasing a home there. Thereafter, on December, 19, 2012, Mr. Marrero requested severance benefits under the Tier II severance plan. On January 16, 2013, he received a letter from WGET denying him severance benefits because he was not a participant in the Tier II severance plan at the time of his termination. Seeking to recover those benefits, Mr. Marrero filed this lawsuit in January, 2013.

## II.  LEGAL STANDARD

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d. 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more

than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). A court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Nevertheless, a court may not assume that a plaintiff can prove facts that were not alleged. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). Indeed, dismissal is appropriate where the complaint "lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted). Even so, "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor

and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc.* v. *Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

### III. ANALYSIS

ERISA Section 502(a) provides that "[a] civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). "This provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). Each of the Defendants contends that Mr. Marrero has not met his burden to plead a legally cognizable claim for severance benefits under § 1132(a)(1)(B). Additionally, Defendants WGET and Willbros both argue that they are not the proper defendants in an action under this section.

#### A. Pleading Sufficiency

Defendants contend that Mr. Marrero's First Amended Complaint does not plead sufficiently the facts required for a claim for severance benefits under 29 U.S.C. § 1132(a)(1)(B). Specifically, Defendants argue that Mr. Marrero did not plead with adequate specificity that he met the conditions for eligibility in the Tier II severance plan; that he was a participant in the Tier II severance plan at the time of his termination; that the conditions of his separation met the Tier II severance plan's requirements for severance pay, and that he did not plead specifically that he was terminated without cause. *See* Willbros's Mot. to Dismiss Pl.'s First Am. Compl. ("Willbros's Mot.") ¶¶ 2-4, 6-7 (Doc. No. 18); WGET's Mot. to Dismiss Pl.'s First Am. Compl.

5

("WGET's Mot.") ¶¶ 2-4, 6-7 (Doc. No. 21); Tier II Plan's Mot. to Dismiss Pl.'s First Am. Compl. ("Tier II Plan's Mot.") ¶¶ 3-5, 7-8 (Doc. No. 23).

The Tier II severance plan provides the framework guiding the Court's evaluation of the sufficiency of the pleadings.[2] In order to receive severance benefits under the Tier II severance plan, 1) Mr. Marrero must have been a participant in the Plan and must have been a participant at the time his employment was terminated; and 2) his employment must have been terminated without cause. *See* Tier II Severance Plan §§ 3.12, 3.2 (Doc. Nos. 18-1, 21-1, 22-2, 23-1).

The Court is satisfied that Mr. Marrero has pleaded sufficient facts to state a claim for severance benefits from the Tier II severance plan. Mr. Marrero pleads that he accepted the Fort Worth position, "including becoming a participant in the Tier II Plan." FAC ¶ 10. Further, Mr. Marrero alleges that his removal from the Tier II severance plan was wrongful, in part because it was procedurally deficient, having not been approved by the Board as required under the Tier II severance plan. FAC ¶ 14. *See* Tier II Severance Plan § 2.2 (Doc. Nos. 18-1, 21-1, 22-2, 23-1). Mr. Marrero also alleges that his removal from the plan was wrongful because he was removed because he did not purchase a home in Fort Worth, even though he was not required to do so under the terms of his relocation package. FAC ¶¶ 12-14. Mr. Marrero pleads that his termination was wrongful for the same reason that he was wrongfully removed from the Tier II severance plan: he did not purchase a home in Fort Worth, even though the relocation package

---

[2] All Defendants attached copies of the Tier II severance plan, effective October 26, 2010, to their motions to dismiss and Plaintiff attached the same to one of his responses. *See* Doc. Nos. 18-1, 21-1, 22-2, 23-1. Ordinarily, if a court considers materials outside the pleadings in adjudicating a motion to dismiss under Rule 12(b)(6), Rule 12(d) requires the court to treat the motion to dismiss "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996). However, several courts, including the Fifth Circuit, recognize that a court may consider documents attached not only to the pleadings, but also to a motion to dismiss under Rule 12(b)(6), if they are referred to by the complaint and are integral and central to the plaintiff's claim(s). *See Collins*, 224 F.3d at 498-99. Although Mr. Marrero did not attach the Tier II severance plan to his First Amended Complaint, it is referred to throughout. *See* Doc. No. 17. Further, it is undisputed that the Tier II severance plan is central to Mr. Marrero's claim for severance benefits. Accordingly, the Court will consider the Tier II severance plan without converting Defendants' motions to dismiss into motions for summary judgment.

did not require him to. *Id.* ¶¶ 15. Finally, Mr. Marrero pleads that he filed a claim for severance benefits under the Tier II severance plan, and that his claim was denied because he was no longer a participant in the Tier II severance plan. *Id.* ¶ 16. Thus, Mr. Marrero has pleaded that he became a participant in the Tier II severance plan, and that, if not for his wrongful removal from the Plan, he would have remained a Tier II severance plan participant at the time his employment was wrongfully terminated. Assuming these allegations are true, and viewing them in the light most favorable to Mr. Marrero, the Court concludes that he has sufficiently stated a denial of severance benefits claim under Rule 12(b)(6).

### B. Proper Defendants

Defendants WGET and Willbros both argue that they are not properly sued in an action for a denial of ERISA plan benefits under 29 U.S.C. § 1132(a)(1)(B). Both maintain that the proper party in such an ERISA claim is the benefit plan alone, and thus that Defendant Tier II Plan is the only proper defendant in this case.

In *Musmeci v. Schwegmann Giant Super Markets, Inc.,* 332 F.3d 339, 349 (5th Cir. 2003), *cert. denied*, 540 U.S. 1110, 124 S.Ct. 1078, 157 L.Ed.2d 898 (2004), the court first noted that the language of the ERISA statute suggests that the plan is the only proper defendant to such a claim. But, the *Musmeci* court also observed that the Seventh, Eleventh, Eighth, and Sixth Circuits had concluded that plan beneficiaries may sue the employer instead of the plan under § 1132(a)(1)(B), if it was the employer's decision to deny the benefits. *Id.* at 349-50. Accordingly, the court held that the employer in *Musmeci* (which was also the plan sponsor and administrator) was a proper defendant under § 1132(a)(1)(B) because it was the entity that actually denied the benefits in question. *Musmeci*, 332 F.3d at 350 (concluding that when the employer is the plan sponsor as well as the administrator who made the final benefits eligibility determination, and

7

where the plan has "no meaningful existence apart from" the employer, the employer is a proper defendant under § 1132(a)(1)(B)). *See also Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 287 (5th Cir. 2007). "The significant factor in the *Musmeci* case was that the employer had the ultimate decisionmaking authority as to whether the plaintiff was entitled to benefits under the plan." *Kinnison v. Humana Health Plan of Tex. Inc.*, No. C-07-381, 2008 WL 2446054, at *10 n.25 (S.D. Tex. June 17, 2008) (citing *Carroll v. United of Omaha Life Ins. Co.*, 378 F.Supp.2d 741, 747 (E.D. La. 2005)).

Following *Musmeci*'s reasoning, as well as that of other circuits, district courts in the Fifth Circuit have "permit[ted] suits against non-plan defendants" when there is "evidence showing that such defendants exert control over plan administration." *Delgado v. Citigroup Inc.*, No. V-06-39, 2008 WL 548801, at *9 (S.D. Tex. Feb. 26, 2008) (citing *Bernstein v. Citigroup Inc.*, No. 3:06-CV-209-M, 2006 WL 2329385, at *7 (N.D. Tex. July 5, 2006) (holding that a claim under § 1132(a)(1)(B) "is not *per se* limited to plan defendants" and noting that such claims have been allowed against non-plan defendants that "control[ ] administration of the plan") (internal quotations omitted)). Indeed, many circuits have held that a defendant who has control over plan administration may be sued properly under § 1132(a)(1)(B). *See, e.g.*, *Terry v. Bayer Corp.*, 145 F.3d 28, 35-36 (1st Cir. 1998) (proper defendant has authority or control over administration); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994) (plan fiduciary is proper defendant); *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1334 (11th Cir. 2006), *reh'g* en banc *denied*, 186 F. App'x 983 (11th Cir. 2006) (party that controls administration is proper party). By contrast, few circuits have held that the plan itself is the *only* proper defendant in all circumstances, and some of those courts that maintained that position in the past have backed away from it. *See, e.g.*, *Mote v. Aetna Life Ins. Co.*, 502 F.3d

601, 610-11 (7th Cir. 2007) (While "[g]enerally, in a suit for ERISA benefits, the plaintiff is 'limited to a suit against the Plan' . . . we have allowed plaintiffs in ERISA cases to sue an ERISA plan administrator in some limited instances") (internal citations omitted).

The Fifth Circuit has recently reiterated that "'[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan' and that '[i]f an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits.'" *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 843-45 (5th Cir. 2013) (quoting *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010)). This Court agrees that, apart from a benefit plan itself, "persons or entities having responsibility . . . for administering benefits are proper parties to [a § 1132(a)(1)(B)] suit." *Delgado*, 2008 WL 548801, at *11.

Here, Mr. Marrero has not only alleged that WGET is the plan administrator, but also that WGET made the determination to deny him severance benefits, and as such, exerted control over plan administration. *See* FAC ¶¶ 7, 16. Mr. Marrero also alleges that Willbros was responsible for making the determination to remove him wrongfully from the Tier II severance plan, and thereby it also exerted control over plan administration. *See id.* ¶¶ 12-14. The Court is satisfied that Mr. Marrero has pleaded sufficient facts, which if proven true, could plausibly demonstrate that Willbros and WGET sufficiently controlled plan administration to make them proper defendants for a § 1132(a)(1)(B) claim. The Court therefore declines to dismiss Mr. Marrero's claims against either Defendants WGET or Willbros.

### C. Exhaustion

Additionally, Willbros claims that Mr. Marrero has not exhausted the available administrative remedies and seeks dismissal, or, in the alternative, a stay of the proceedings until

he has done so. Mr. Marrero claims that he has indeed exhausted all administrative remedies. Mr. Marrero attached to his Response the Final Benefits Determination from WGET denying his appeal of the initial denial of severance benefits. *See* Final Benefits Determination, May, 1, 2013 (Doc. No. 20-1). With this denial, Mr. Marrero claims that there can be no question that all of his administrative options have been exhausted, and therefore that Willbros's motion to dismiss, insofar as it relates to exhaustion, is moot. Willbros has not challenged Mr. Marrero's argument, and none of the other Defendants has raised the issue of exhaustion.

Generally, the Fifth Circuit requires that "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000); *Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004) (internal quotations omitted). This rule is in place, in part, to "encourage the parties to resolve their dispute at the administrator's level." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

"Exhaustion of administrative remedies, however, is not a jurisdictional bar; it is an affirmative defense." *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, No. H-09-0646, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010) (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308-09 (5th Cir. 2008) ("'[W]e have never construed the [ERISA exhaustion] doctrine strictly as a jurisdictional bar' and have referred to it as a 'defense.' Other circuits have expressly held that ERISA exhaustion is not jurisdictional, and we agree.") (internal citations omitted)). Furthermore, "[a] complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense." *Id.* (citing *Hall v. Hodgkins*, 305 F.

App'x 224, 228 n.1 (5th Cir. 2008)). *See also Wilson*, 254 F. App'x at 287 ("[T]he Supreme Court has recently found–with respect to exhaustion requirements under the Prison Litigation Reform Act–that exhaustion is an affirmative defense, and that plaintiffs need not 'specially plead or demonstrate exhaustion in their complaints' to avoid 12(b)(6) dismissal.") (internal citations omitted)). However, "[a]n exception to this rule may apply if the plaintiff has alleged facts plainly indicating that an affirmative defense does apply." *Am. Surgical Assistants*, 2010 WL 565283, at *2; *see also Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

Here, Willbros has moved to dismiss for failure to state a claim under Rule 12(b)(6). The Court is persuaded that dismissal for failure to exhaust administrative ERISA remedies generally is not appropriate on a Rule 12(b)(6) motion to dismiss. Further, Mr. Marrero has pleaded that he satisfied the exhaustion requirement. *See* FAC ¶¶ 17-19. While these particular allegations are somewhat conclusory, it remains the case that Mr. Marrero has not pleaded facts "plainly indicating" that the exhaustion defense applies. *Am. Surgical Assistants*, 2010 WL 565283, at *2.

To the extent that Wilbros's motion may be construed as an independent motion to dismiss for failure to exhaust administrative remedies, Willbros concedes that administrative remedies will have been exhausted following a denial of severance benefits upon appeal. Willbros's Mot. ¶ 9. With the Final Benefits Determination denying his appeal (Doc. No. 20-1), the Court finds that Mr. Marrero has met the exhaustion requirement, and therefore Willbros's motion is moot. Because exhaustion is an affirmative defense, rather than a jurisdictional bar, and Mr. Marrero has in fact exhausted administrative remedies, the Court also finds it inappropriate to stay the proceedings.

## IV. CONCLUSION

For the reasons stated in this memorandum, Defendants' Motions to Dismiss and Defendant Willbros's Motion to Stay are **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 25th day of September, 2013.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE
